UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

MIRIAM RUTH LAMPERT,

                            Plaintiff,

      -against-

TOWN OF CHESTER, JOHN MADAY,
MARION EAGAN, JEREMY LITTLE,
BRANDON COMBS, RICHARD GRIMALDI,
WENDY MIKKELSEN, and ANTHONY
MONTALBANO,

                          Defendants.

COMPLAINT

JURY TRIAL DEMANDED

1:26-cv-00093 (ECC/ML)

---

Plaintiff, Miriam Ruth Lampert, by her attorneys, Finn Law Offices, complains and alleges against Defendants as follows:

**<u>NATURE OF THE ACTION</u>**

1. This civil-rights action arises from Defendants' discrimination, retaliation and defamation against Plaintiff because she is an observant Orthodox Jewish woman who installed and maintains a kosher second kitchen in her home, and from Defendants' coordinated efforts to silence, punish, and criminally charge her based on knowingly false allegations after she asserted her rights and sought religious accommodation.

2. Defendants' conduct violated Plaintiff's rights under the First and Fourteenth Amendments, the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000cc et seq., and New York law, and gives rise to municipal liability against the Town of Chester, the County of Warren, and the individually named defendants under 42 U.S.C. § 1983.

**JURISDICTION AND VENUE**

3.  This Court has federal-question jurisdiction under 28 U.S.C. §§ 1331 and 1343 because Plaintiff asserts claims under 42 U.S.C. §§ 1983 and 1985 and RLUIPA, 42 U.S.C. § 2000cc–2(a), which contains a private right of action and authorizes "appropriate relief against a government."

4.  The Court has supplemental jurisdiction over state-law claims under 28 U.S.C. § 1367 because they form part of the same case or controversy.

5.  Venue is proper in this District under 28 U.S.C. § 1391 because all Defendants reside in, and a substantial part of the events occurred in, Warren County, New York.

**PARTIES**

6.  Plaintiff Miriam Ruth Lampert is a resident of the Town of Chester, Warren County, New York, residing at 67 Sequettes Road. Plaintiff is an observant Orthodox Jew and member of Chabad.

7.  Defendant Town of Chester is a New York municipal corporation responsible for land-use, planning, and zoning administration of land in the Town.

8.  Defendant John Maday is the Town Supervisor and, on information and belief, a final policymaker concerning personnel oversight over the Planning and Zoning Department. He is sued in his individual and official capacities.

9.  Defendant Marion Eagan is the Town Enforcement Officer for the Town of Chester Planning and Zoning Board. She is sued in her individual and official capacities.

10. Defendant Jeremy Little is the Town Zoning Administrator for the Town of Chester Planning and Zoning Board. He is sued in his individual and official capacities.

11. Defendant Brandon Combs is a Deputy Sheriff with the Warren County Sheriff's Office. He is sued in his individual and official capacity.

12. Defendant Richard Grimaldi is a supervisory officer at the Warren County Sheriff's Office and was Deputy Combs's supervisor. He is sued in his individual and official capacity.

13. Defendants Wendy Mikkelsen and Anthony Montalbano are spouses and reside at 28 Sequettes Road, in the Town of Chester, County of Warren, a property known as "Twin Pines Lodge" which abuts plaintiff's property and shares a deeded right of way with plaintiff.

14. Defendant Wendy Mikkelson sits on the Town of Chester Zoning Board.

15. It is alleged that the personal relationship of defendants Eagan, Little, Mikkelson and Montalbano contributed to the conspiracy to deprive plaintiff of her civil rights including but not limited to a shared discriminatory animus toward plaintiff because of her religious beliefs and creed.

## FACTS

### A. Plaintiff's kosher kitchen and requests for accommodation

16. Plaintiff lawfully installed a second kitchen in her home to keep strictly kosher in accordance with her sincerely held Orthodox Jewish beliefs.

17. Upon information and belief, defendants Mikkelsen and Montalbano made a complaint to the Town of Chester regarding the kosher kitchen.

18. Plaintiff was informed by defendant Eagan that she needed to remove the second kitchen.

19. Plaintiff then emailed Town Enforcement Officer Eagan explaining that RLUIPA protects religious land uses and that preventing an observant Jewish family from maintaining a second kitchen would burden religious exercise.

20. Eagan responded, among other things: "how kosher are you?"; "I don't care"; and "we will see how kosher you really are." Plaintiff ended the conversation in tears due to the hostility and mockery.

21. At this point plaintiff was a target of Eagan.  The Jewish kitchen continued to be an issue but the zoning board, led by defendant Eagan and Little, also targeted plaintiff by challenging a "carport" on plaintiff's property, claiming that the carport was too close to the "front" of the property.

22. Plaintiff was forced to seek a variance, which was unlawfully denied.  Plaintiff was forced to hire legal counsel and fight the Town on the carport issue at a great (and unnecessary) expense both financially and emotionally.  Plaintiff contends that she was targeted, harassed and bullied by Eagan and Little because of her Jewish faith and because she had made complaints about prior unlawful treatment.  Throughout the carport fight plaintiff was threatened that she would need to tear out her second kitchen and take down her carport.

23. Plaintiff should have been able to simply get a permit to resolve both issues (the carport and the second kitchen) but instead she was harassed, targeted, bullied and mistreated. During public meetings defendants Wendy Mikkelseon and Montalbano made public statement to discredit, embarrass, and harass plaintiff.

24. During this time plaintiff reiterated RLUIPA's protections and retained counsel at her own expense.  She had to fight with the Town for a number of months and at a considerable

legal expense which caused a significant economic as well as emotional toll as she had to fight against an antisemitic Zoning Board that refused to acknowledge or accommodate her religious beliefs.

25. Eagan and Zoning Administrator Little control access to and the processing of Planning and Zoning matters for the Town and are listed as the only contacts for the Town Planning and Zoning Board. They refused to engage in a good-faith interactive process, mocked Plaintiff's religious needs, and denied accommodation, demanding that she remove the kosher kitchen.

**B.  The April 25, 2025 filing of false criminal charges and the coordinated effort to criminally charge Plaintiff and defame her**

26. On April 25, 2025, Plaintiff's neighbors, Mikkelsen and Montalbano made a false police report to Deputy Combs accusing Plaintiff of harassment and other misconduct. They told Combs that Eagan was their "witness," even though Eagan had not witnessed any interaction between them and Plaintiff.

27. When Deputy Combs interviewed Eagan regarding the criminal complaints of harassment, Eagan told defendant Combs that Plaintiff is "pretending" to be Jewish, is "playing games" with her "kosher kitchen," mocked her, and joked about being antisemitic. During this conversation defendant Little was present and laughed at the antisemitic remarks and agreed with the antisemitic sentiment of Eagan.

28. Eagan told Combs she would buy him dinner and allow him to walk in their parade if he was on "Team Twin Pines" (a reference to Wendy Mikkelson and Anthony Montalbano's property).  Defendant Eagan urged defendant Combs to "go after" Plaintiff and

"embellish" charges. Body-worn camera video of approximately 28 minutes captures much of this exchange.

29. The harassment charges broadly claimed that plaintiff had honked her horn, played loud music, revved her engine, and other non-threatening and non-harassing conduct.

30. All defendants knew the charges were false and baseless.

31. Defendant Combs told defendants Mikkelsen and Montalbano that Eagan and Town Judge McDermott are friends working in the same building and would make sure the charges "stick." Defendant Combs similarly boasted about his close relationship with the District Attorney.

32. Despite admitting on body camera that Plaintiff had not done anything illegal, defendant Combs arrested Plaintiff for "harassment," included an allegation about "speeding on the right of way" that he knew had no lawful basis, and deliberately failed to interview Plaintiff before arresting her.

33. Essentially, defendant Combs did not perform any reasonable investigation and brought charges he knew were false in an effort to please defendant Eagan who, in his presence, openly engaged in religious discrimination and made antisemitic remarks.

34. Defendant Richard Grimaldi is named as a defendant because, according to defendant Combs, he reported what he knew and what is investigation entailed, and defendant Grimaldi told him to arrest plaintiff. (therefore both deputy sheriffs were personally involved in the decision-making process and are therefore both legally responsible)

35. On information and belief, Combs was offered a thing of value in exchange for bringing charges ("I'll buy you dinner," marching in a parade).

36. Defendants Mikkelsen, Montalbano, Eagan and Little further spread false rumors that Plaintiff and/or her son were engaged in "drug dealing" and pushed for drug-related charges without basis.

37. On or about May 15, 2025, when Anthony signed an amended complaint, Combs stated on body camera that Plaintiff's household was being investigated by the narcotics unit based solely on neighbors' allegations. Neighbors alleged, without basis, that Plaintiff was part of an illegal "underground street racing" group with "two blacked out Hondas."

38. The April 25, 2025 body camera captures Wendy Mikkelsen and Anthony Montalbano telling law enforcement that Plaintiff is a drug dealer operating "illegal apartments" and stating that she allows her adult son to sell illegal psilocybin chocolates on the property—statements that are categorically false and defamatory.

39. On bodycam from May 15, 2025 defendant Montalbano states "People come to my door asking to buy drugs from her son every other day" and then references people at plaintiff's property as "drug dealers" "illegal tenants" "terrible people" "just horrible human beings." Montalbano further states (referring to plaintiff), "That woman was convicted, lost her license for dental, for dealing opioids in Florida. So this woman is a bad lady, her kid's a drug dealer, the people in town are telling me to watch out for this kid he's a drug dealer."

40. Defendants Eagan, Mikkelsen and Montalbano have continuously claimed, repeatedly, that plaintiff is a drug dealer, addict or drug abuser, and lost her license to practice dentistry because of her drug habits—completely false statements.

C. **Notice to the Town Supervisor and continuing deliberate indifference**

41. After her false arrest Plaintiff corresponded with Town Supervisor John Maday by email and spoke with him by phone to complain about Eagan's antisemitic mocking and her improper role as a "witness" in neighbors' criminal allegations unrelated to zoning. To date, Maday has taken no corrective action.

42. Plaintiff continues to suffer emotional distress, reputational harm, attorney's fees, and the chilling of her religious exercise and speech (including her right to petition the government) as a result of Defendants' actions.

43. At trial plaintiff was exonerated and found not guilty as the baseless claims lacked merit.

## CAUSES OF ACTION

**COUNT I – RLUIPA (42 U.S.C. § 2000cc et seq.) – Substantial Burden; Equal Terms; Nondiscrimination (Against Town of Chester; Eagan, Little, Maday and Mikkelsen in their official capacities)**

44. Plaintiff repeats and realleges all prior paragraphs.

45. Plaintiff's second kitchen is used to practice her sincerely held Orthodox Jewish beliefs by maintaining a kosher home.

46. Defendants' actions—including demanding removal of Plaintiff's second kitchen, refusing accommodation, and conditioning zoning approvals in ways that burden her religious practice—constitute the implementation of land use regulation that imposes a substantial burden on Plaintiff's religious exercise without a compelling interest pursued through the least restrictive means; treat religious exercise on less than equal terms with nonreligious uses; and discriminate on the basis of religion or religious denomination.

47. Plaintiff seeks declaratory and injunctive relief, reasonable accommodations, and other appropriate relief including reimbursement of legal fees and emotional distress damages against the Town and its officials in their official capacities.

48. Plaintiff seeks money damages in an amount to be determined by a jury, including damages for pain and suffering, emotional distress, damage to reputation and economic loss; punitive damages; attorneys' fees; together with interest, costs, disbursements, and any other equitable relief this Court deems just and proper.

**COUNT II – 42 U.S.C. § 1983 and New York State Human Rights Law– Free Exercise, Free Speech, and Equal Protection (Religious Animus and Selective Enforcement) (Against Eagan, Little, Maday, Combs, Grimaldi, Mikkelson, Montalbano in their individual capacities; Monell claim against the Town of Chester)**

49. Plaintiff repeats and realleges all prior paragraphs.

50. Eagan and Little acted under color of state law to target Plaintiff because of her religion, mocked her faith, denied reasonable accommodation, and selectively enforced zoning authority in a discriminatory manner. Their conduct burdened Plaintiff's Free Exercise and Free Speech rights and denied Equal Protection under the law and in violation of the New York State Human Rights Law which prohibits discrimination on the basis of religion or creed.

51. The Town of Chester is liable under Monell and the New York State Human Rights Law because the constitutional deprivations were caused by municipal policy/custom, including: (a) decisions by officials with final policymaking authority over zoning enforcement (Eagan and/or Little) in the Town's Planning and Zoning apparatus; (b)

ratification and deliberate indifference by Supervisor Maday after notice; and/or (c) a practice of discriminatory treatment toward minority religious exercise.

52. The Second Circuit has recognized that zoning measures motivated by animus toward Orthodox Jews violate the Constitution when discriminatory intent is shown.

53. New York State Courts have recognized that the Human Rights Law protects individuals from discrimination by municipalities and individuals who engage in religious discrimination related to places of public accommodation and public services.

54. Plaintiff seeks declaratory and injunctive relief, reasonable accommodations, and other appropriate relief including reimbursement of legal fees and emotional distress damages against the Town and its officials in their official capacities.

55. Plaintiff seeks money damages in an amount to be determined by a jury, including damages for pain and suffering, emotional distress, damage to reputation, and economic loss; punitive damages; attorneys' fees; together with interest, costs, disbursements, and any other equitable relief this Court deems just and proper.

**COUNT III – 42 U.S.C. § 1983 – First Amendment Retaliation and New York State Human Rights Retaliation (Speech/Petition and Religious Exercise) (Against Eagan, Little, Maday, Combs, Mikkelsen, Montalbano and Grimaldi in their individual capacities; Monell claim against the Town of Chester)**

56. Plaintiff repeats and realleges all prior paragraphs.

57. Plaintiff engaged in protected speech and petition activity by invoking RLUIPA and making claims of religious discrimination that are protected by the New York State Human Rights Law, by seeking accommodation, and complaining to Town officials about discriminatory treatment.

58. Defendants took adverse actions—pressuring for and filing false criminal charges; spreading defamatory accusations; conditioning favorable treatment on allegiance to "team twin pines"; and discouraging Plaintiff's religious practice—because of Plaintiff's protected activity. The protected activity was a substantial or motivating factor in Defendants' actions.

59. The absence of probable cause for the harassment charge (as admitted on body camera) further supports causal inference in a retaliatory-arrest claim.

60. The Town is liable under Monell for retaliation for the reasons stated above, including ratification and failure to supervise/discipline after notice to Supervisor Maday.

61. Plaintiff seeks money damages in an amount to be determined by a jury, including damages for pain and suffering, emotional distress, damage to reputation, and economic loss; punitive damages; attorneys' fees; together with interest, costs, disbursements, and any other equitable relief this Court deems just and proper.

**COUNT IV – 42 U.S.C. § 1983 – Fourth Amendment (False Arrest) and Malicious Prosecution (Against Eagan, Little, Maday, Combs, Mikkelsen, Montalbano and Grimaldi in their individual capacities)**

62. Plaintiff repeats and realleges all prior paragraphs.

63. Combs arrested Plaintiff without probable cause after a one-sided, unreasonable "investigation," failing to interview Plaintiff and admitting on body camera that she had not engaged in illegal conduct.

64. He included baseless allegations (e.g., honking, revving of engine, loud music speed on a right of way) despite knowing there was no lawful basis.

65. At trial plaintiff was exonerated and found not guilty as the baseless claims lacked merit.

66. To the extent Defendants procured judicial process by materially false statements or omissions, they violated the Fourth Amendment. As courts have explained, "where an officer knows, or has reason to know, that he has materially misled a magistrate on the basis for a finding of probable cause, … the shield of qualified immunity is lost."

67. The named defendants conspired to have plaintiff falsely arrested and forced her to spend money defending the knowingly false charges that were based upon fabricated and false evidence.

68. Plaintiff alleges Defendants initiated and continued a criminal proceeding against her without probable cause and with malice, causing post-arraignment liberty restraints and damages.

69. Plaintiff seeks money damages in an amount to be determined by a jury, including damages for pain and suffering, emotional distress, damage to reputation, and economic loss; punitive damages; attorneys' fees; together with interest, costs, disbursements, and any other equitable relief this Court deems just and proper.

**COUNT V – 42 U.S.C. § 1983 – Procedural and Substantive Due Process (Against Eagan, Little, Maday, Mikkelsen, Montalbano Combs, and Grimaldi in their individual capacities; Monell claim against the Town)**

70. Plaintiff repeats and realleges all prior paragraphs.

71. Defendants arbitrarily denied and interfered with land-use benefits and accommodations tied to Plaintiff's property without fair procedures, and engaged in conscience-shocking conduct—including mockery based on religion, attempts to bribe/induce law enforcement action, and the pursuit of baseless criminal charges—in violation of due process. The Town's policies/customs and failure to supervise caused these violations.

72. Plaintiff seeks money damages in an amount to be determined by a jury, including damages for pain and suffering, emotional distress, damage to reputation, and economic loss; punitive damages; attorneys' fees; together with interest, costs, disbursements, and any other equitable relief this Court deems just and proper.

**COUNT VI – 42 U.S.C. § 1983 and 42 U.S.C. § 1985(3) – Conspiracy to Deprive Equal Protection and Free Exercise (Religious Animus) (Against Eagan, Little, Maday, Combs, Grimaldi, Mikkelsen, and Montalbano)**

73. Plaintiff repeats and realleges all prior paragraphs.

74. Defendants reached a meeting of the minds to target and punish Plaintiff based on her Jewish faith by fabricating or embellishing allegations, leveraging Town influence, and weaponizing criminal process, thereby depriving Plaintiff of equal protection and First Amendment rights.

75. Overt acts include the April 25, 2025 coordination and statements captured on body camera.

76. Plaintiff seeks money damages in an amount to be determined by a jury, including damages for pain and suffering, emotional distress, damage to reputation, and economic loss; punitive damages; attorneys' fees; together with interest, costs, disbursements, and any other equitable relief this Court deems just and proper.

**COUNT VII - 42 U.S.C. § 1983 (Fabricated Evidence Claim, Fourth and Fourteenth Amendments) (Against Eagan, Little, Maday, Combs, Grimaldi, Mikkelsen, and Montalbano)**

77. Plaintiff repeats and realleges all prior paragraphs.

78. The Fourth Amendment prohibits government officials from detaining a person absent probable cause, which does not exist where a judge's probable cause determination is based solely on the false statements of a witness or police officer.

79. The Plaintiff was wrongfully arrested, detained, and suffered injury to reputation and liberty, violating a clearly established constitutional due process right not to be subjected to criminal charges based on deliberately fabricated evidence.

80. Plaintiff seeks money damages in an amount to be determined by a jury, including damages for pain and suffering, emotional distress, damage to reputation, and economic loss; punitive damages; attorneys' fees; together with interest, costs, disbursements, and any other equitable relief this Court deems just and proper.

**COUNT VIII – Common Law Defamation Per Se (New York Law) (Against Mikkelsen, Montalbano, and Eagan)**

81. Plaintiff repeats and realleges all prior paragraphs.

82. Defendants repeatedly published false statements of fact to third parties (including law enforcement and contractors) accusing Plaintiff and her son of serious crimes ("drug dealing," selling illegal drugs, and illegal drug use resulting in loss of a dentistry license), and Eagan further republished/endorsed accusations of criminality. These statements are false, were made with negligence or malice, constitute defamation per se (accusing serious crime), and caused presumed and actual damages.

83. Plaintiff seeks money damages in an amount to be determined by a jury, including damages for pain and suffering, emotional distress, damage to reputation, and economic

loss; punitive damages; attorneys' fees; together with interest, costs, disbursements, and any other equitable relief this Court deems just and proper.

### COUNT IX – Common Law Intentional Infliction of Emotional Distress (New York Law) (Against Eagan, Little, Maday, Combs, Grimaldi, Mikkelsen, and Montalbano)

84. Plaintiff repeats and realleges all prior paragraphs.

85. Defendants engaged in extreme and outrageous conduct—including antisemitic mockery, coordinated efforts to have Plaintiff criminally charged without probable cause, dissemination of false criminal accusations and accusations of drug use and sales, and abuse of governmental power—intentionally or recklessly causing severe emotional distress.

86. New York law recognizes IIED where a defendant intends or recklessly causes severe distress through extreme and outrageous conduct, and permits pleading in the alternative alongside other torts.

87. Plaintiff seeks money damages in an amount to be determined by a jury, including damages for pain and suffering, emotional distress, damage to reputation, and economic loss; punitive damages; attorneys' fees; together with interest, costs, disbursements, and any other equitable relief this Court deems just and proper.

### COUNT X – Common Law Abuse of Process (New York Law) (Against Eagan, Little, Maday, Combs, Grimaldi, Mikkelsen, and Montalbano)

88. Plaintiff repeats and realleges all prior paragraphs.

89. Defendants used criminal process against Plaintiff primarily to achieve a collateral objective—including retaliation for Plaintiff's protected complaints and to advantage "team twin pines"—by knowingly including false allegations and pursuing charges without probable cause, causing damages.

90. Plaintiff seeks money damages in an amount to be determined by a jury, including damages for pain and suffering, emotional distress, damage to reputation, and economic loss; punitive damages; attorneys' fees; together with interest, costs, disbursements, and any other equitable relief this Court deems just and proper.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in her favor and against Defendants, jointly and severally, as requested above.  F. Such other and further relief as the Court deems just and proper.

### JURY DEMAND

Plaintiff demands a trial by jury on all triable issues.

Dated: January 21, 2026

FINN LAW OFFICES
Attorneys for Plaintiff

By:_____ _____
        Ryan M. Finn, Esq.
12 Sheridan Avenue
Albany, NY 12207
Ph: 518.928.1152
Fax:  518.677.1155

Ryan@LawFinn.com
www.LawFinn.com